

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 4, 2017**

**United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| FOREST PARK MEDICAL CENTER AT | ) | Case No. 16-40198-rfn-11 |
| FORT WORTH, LLC | ) | |
| | ) | |
| Debtor. | ) | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE PLAN OF LIQUIDATION FOR FOREST PARK MEDICAL CENTER AT FORT WORTH, LLC

On May 1, 2017, the Court held a hearing to consider confirmation of the *First Amended Plan of Liquidation for Forest Park Medical Center of Fort Worth, LLC* (as amended, revised or modified, the "Plan") [Docket no. 611] filed by the Debtor, Forest Park Medical Center at Fort Worth, LLC, as supplemented by the *First Supplement to the First Amended Plan of Liquidation for Forest Park Medical Center at Fort Worth, LLC* ("First Supplement") [Docket no. 658] and as modified by a *Notice of Revised Schedule 1 to Exhibit B of Debtor's First Amended Plan of Liquidation for Fort Worth Medical Center at Fort Worth, LLC* [Docket no. 615] ("Schedule 1

Notice"). Defined terms used in this Order, unless otherwise specifically defined herein, shall be given the same meaning as in the Plan.

The Debtor commenced its bankruptcy case on January 10, 2016. No trustee or examiner has been appointed for the Debtor which has acted, at all times, as a debtor-in-possession. Pursuant to an *Appointment of the Official Unsecured Creditors' Committee* [Docket no. 52] dated January 20, 2016, the U.S. Trustee has appointed an Official Committee of Unsecured Creditors ("Committee"). The Committee has retained counsel and has actively participated in this Bankruptcy Case.

Pursuant to an *Amended Order Approving Application of the Debtor Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Authorizing the Debtor to Retain (i) Alvarez & Marsal Healthcare Industry Group, LLC, and (ii) Designate Ronald Winters as Chief Restructuring Officer for the Debtor Nunc Pro Tunc to the Petition Date* [Docket no. 98] ("CRO Order") entered on February 5, 2016, Ronald W. Winters of the firm Alvarez & Marsal Healthcare Industry Group, LLC was appointed as the Chief Restructuring Officer ("CRO") of the Debtor. The CRO has continued to serve in this capacity through the date of the entry of this Order.

On March 24, 2017, the Court entered its *Order (I) Approving Disclosure Statement, (II) Approving Solicitation Materials for the Confirmation of the Plan, (III) Setting Deadlines Related to the Confirmation of the Plan, (IV) Prescribing Notice to Certain Parties, and (V) Approving Notice by Publication* [Docket no. 621] ("Solicitation Order"). Pursuant to the Solicitation Order, the Court, among other things, approved the *First Amended Disclosure Statement Pursuant to Section 1125 of the United States Bankruptcy Code with Respect to the Plan of Liquidation for Forest Park Medical Center at Fort Worth, LLC* [Docket no. 612] ("Disclosure Statement"), established procedures for the solicitation and tabulation of votes to accept or reject the Plan, fixed deadlines for objections to the Plan, approved certain notices to Creditors and parties-in-interest, including notice by publication, and set a date for the hearing for confirmation of the Plan ("Confirmation Hearing") at **May 1, 2017 at 9:30 a.m. (Central Time).**

The Solicitation Order approved the following documents (collectively the "Solicitation Materials") to be served on Creditors entitled to vote on the Plan:

a)   the Plan;

b)   the Disclosure Statement;

c)   the Solicitation Order;

d)   a Notice ("Confirmation Notice") reflecting the deadlines and other information relating to confirmation of the Plan;

e)   a letter ("Debtor Letter") from counsel for the Debtor relating to the confirmation of the Plan; and

f)   a letter ("Committee Letter") from counsel for the Committee also relating to the confirmation of the Plan.

The Solicitation Order also approved a form of notice ("Patient Notice") to be sent to former patients at Debtor's hospital facility and a form for notice by publication ("Publication Notice") to unknown Creditors.  The Solicitation Order also approved the form of both the Debtor Letter and the Committee Letter.

The only objection to the Plan was the *United States Trustee's Objection to First Amended Plan of Liquidation for Forest Park Medical Center at Fort Worth, LLC* [Docket no. 669] ("UST Objection").  The UST Objection has been resolved through the provisions of this Order.

The Confirmation Hearing was commenced at the time and date scheduled.  Based on the testimony, exhibits, and proffered evidence presented, judicial notice of the record of this Bankruptcy Case, and the arguments of counsel, the Court makes this *Findings of Fact, Conclusions of Law, and Order Confirming the Plan of Liquidation for Forest Park Medical Center at Fort Worth, LLC* ("Order") relating to the Plan.

ACCORDINGLY, the Court hereby finds and determines as set forth below:

A.   *Findings and Conclusions*.  All findings of fact or conclusions of law made by the Court on the record at the Confirmation Hearing are hereby incorporated in their entirety into this Order.  The findings and conclusions set forth herein and in the record of the Confirmation

Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure as made applicable herein by Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     *Jurisdiction; Venue; Core Proceeding*. The Court has jurisdiction over this Bankruptcy Case pursuant to 28 U.S.C. sections 157(b) and 1334. The Debtor is eligible debtor under section 109 of the Bankruptcy Code.[1] Venue is proper before this Court pursuant to 28 U.S.C. sections 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(A), (L) and (O) over which the Court has exclusive jurisdiction and full constitutional jurisdiction and authority to enter final orders with respect thereto.

C.     *Judicial Notice*. The Court hereby takes judicial notice of the docket of this Bankruptcy Case and all adversary proceedings arising out of this case and maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings, stipulations and other documents filed with, all orders entered by, and all evidence and argument made, proffered or adduced at the hearings held before the Court during the pendency of this Bankruptcy Case.

D.     *Eligibility for Relief*. The Debtor qualified for relief as "debtor" pursuant to section 109 of the Bankruptcy Code. The Debtor is the proponent of the Plan in accordance with section 1121 of the Bankruptcy Code.

E.     *Commencement and Administration of this Bankruptcy Case*. This Bankruptcy Case was commenced on January 10, 2016. No trustee or examiner has been appointed in this Bankruptcy Case. Pursuant to the CRO Order, the CRO was appointed and has served in this capacity through the date of this Order.

---

[1] Unless otherwise indicated, section references are to the United States Bankruptcy Code, Title 11 of the United States Code.

F.     *Burden of Proof*.  The Debtor has the burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence.  The Court finds that the Debtor has met each element of such burden.  The testimony of the Debtor's witnesses in support of the Plan was credible and believable on the subjects and issues for which such testimony was offered.

G.     *Transmittal and Mailing of Solicitation Materials and Notices*.  The deadlines relating to the confirmation of the Plan, including the solicitation of acceptances of the Plan, are set forth in the Scheduling Order and Confirmation Notice.  The Scheduling Order also prescribes the documents which are to be served upon Creditors and parties in interest as a part of the Solicitation Materials as described above.  The Disclosure Statement, the Solicitation Materials, the Patient Notice and the Publication Notice were all approved in the Solicitation Order.  The Debtor has filed a *Certificate of Service* [Docket no. 637] ("Solicitation Certificate of Service") reflecting the service of the Solicitation Materials upon Creditors and parties-in-interest potentially entitled to vote on the Plan.  The Debtor has filed a second *Certificate of Service* ("Patient Notice Certificate of Service") relating to the service of the Patient Notice [Docket no. 638] reflecting the service of the Patient Notice upon the Debtor's former patients.  A third *Certificate of Service* [Docket no. 682] ("Class 3 Certificate of Service") reflects the service of the Solicitation Materials upon Class 3 Creditors.  The Solicitation Certificates of Service, the Patient Notice Certificate of Service and the Class 3 Certificate of Service are all collectively referred to as "Certificates of Service".  Based upon the Certificates of Service, once the Disclosure Statement and the Solicitation Materials were served on Creditors, the Debtor was entitled to solicit Ballots accepting the Plan.

H.     *Notice by Publication*.  The Debtor has also filed a *Certificate of Publication in The Dallas Morning News* [Docket no. 680] and *Certificate of Publication in the Star-Telegram* [Docket no. 681] ("Certificate of Publication") reflecting that the Publication Notice was published on March 26, 2017 in *The Dallas Morning News* and on April 1, 2017 in the *Fort Worth Star-*

*Telegram*, the newspapers of general circulation in Tarrant County, Texas and the surrounding area. The publication of the Publication Notices satisfies all applicable requirements for giving notice to unknown Creditors through publication.

I.      *Notice to Former Patients*. The Patient Notice Certificate of Service reflects that the Patient Notice was served upon the Debtor's former patients. A list of the former patients so served is maintained by Debtor's counsel. The Court takes judicial notice of both the Claims Register and the Docket Sheet as well as the testimony at the Confirmation Hearing which reflects that no former patient has filed either a proof of claim or application for allowance of an administrative expense. The service of the Patient Notice upon former patients, as reflected in the Certificate of Service, provided full, adequate and timely notice to Debtor's former patients of the Confirmation Hearing.

J.      *Appropriate Notice*. Based upon the service of notice reflected in the Certificate of Service and the notice by publication reflected in the Certificate of Publication, full adequate and timely notice of the confirmation process and associated deadlines and hearings has been given to all Creditors and parties-in-interest, including both the Debtor's former patients and unknown Creditors.

K.      *Adequacy of Solicitation Procedures*. All procedures used to serve and distribute the Solicitation Materials to the holders of Claims potentially entitled to vote on the Plan and to tabulate the Ballots returned by such holders of Claims were fair and were conducted in good faith in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order. Votes for acceptance or rejection of the Plan were solicited and cast in good faith, and only after transmittal of the Disclosure Statement, and the Solicitation Materials, which contains adequate information, and otherwise in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and N.D. Tex. L.B.R. 3018-1. The solicitation procedures by the Debtor comply with and satisfy the applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.

L. _Good Faith Solicitation – section 1125(e)_. Based on the record before the Court in this Bankruptcy Case, the Debtor and its Professionals have acted in good faith within the meaning of sections 1125(e) and 1129(a)(3), and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order, in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in section 1125, and are entitled to the protections afforded by section 1125(e).

M. _Ballot Tabulation_. The Voting Deadline pursuant to the Scheduling Order for casting Ballots to accept or reject the Plan has passed. The Debtor has tabulated the Ballots submitted by all Classes entitled to vote in connection with the Plan and which is reflected in the _Tabulation of Ballots in Connection with Confirmation of Debtor's Plan of Liquidation_ for Forest Park Medical Center at Fort Worth, LLC [Docket no. 683] ("Ballot Tabulation"). No objection has been made to the Ballot Tabulation. The Court accepts the Ballot Tabulation as accurately reflecting the Ballots cast to accept or reject the Plan by the Classes entitled to vote on the Plan.

N. _Classes Deemed to Have Accepted or Rejected the Plan_. No Class of Creditors is deemed to have accepted the Plan pursuant to section 1126(f). Class 4, consisting of Interests, is conclusively deemed to have rejected the Plan pursuant to section 1126(g).

O. _Impaired Classes of Creditors Voting to Accept or Reject the Plan_. Based upon the Ballot Tabulation, the Court finds that the following Classes have voted on the Plan as follows:

      i)      Class 1 – voted to accept the Plan as follows:

| Ballots Accepting | | Ballots Rejecting | |
|---|---|---|---|
| Number | Amount | Number | Amount |
| 78 | $53,517,905.68 | 2 | $4,548.38 |

      ii)     Class 2 – no Ballots were cast by any member of this Class; and

      iii)    Class 3 – no Ballots were cast by any member of this Class.

Holders of Class 4 Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. However, based on the evidence at the Confirmation Hearing, it appears that there are no unsatisfied Class 2 Property Tax Claims which is an empty Class.

P.    *Plan Objections*. The only objection to confirmation of the Plan was the UST Objection. This objection has been resolved based upon the provisions of paragraphs 11 and 12 below.

Q.    *Non-Professional Administrative Claims*. The Court has entered an *Order Granting Debtor's Motion for Entry of an Order (1) Establishing March 31, 2017 as the Bar Date for Filing Requests for Allowance of Administrative Claims Arising On or Before February 28, 2017; and (2) Approving Notice Procedures with Respect Thereto* [Docket no. 588] ("Administrative Expense Order") setting a bar date of March 31, 2017 for asserting Administrative Expense Claims accruing through February 28, 2017, other than such claims by Professionals, Tax Authorities and certain other Administrative Expense Claimants. Any Claimant subject to the Administrative Expense Order failing to file a timely application for allowance of an Administrative Expense as required by the Administrative Expense Order shall receive no Distribution through the Plan on account of any such Administrative Expense Claim.

R.    *Liquidating Trust Agreement*. The form of the Liquidating Trust Agreement is attached as an Exhibit to the Plan and was filed as a Plan Document. The terms of the Liquidating Trust have been negotiated at arm's length and in good faith between the Debtor and the Committee. The form of the Liquidating Trust Agreement is approved as a fair and appropriate manner to execute and perform the terms of the Plan and as being in the best interests of the beneficiaries of the Liquidating Trust. A copy of the Liquidating Trust Agreement is attached as **Exhibit "A"** to this Order.

S.    *Liquidating Trustee*. Clifford A. Zucker is nominated to act as the Liquidating Trustee. Based upon the record, Mr. Zucker is well qualified to act as Liquidating Trustee and the appointment of him/her in this position is in the best interests of the Creditors who will be the

beneficiaries of the Liquidating Trust. The nomination of Mr. Zucker to act as the Liquidating

Trustee is hereby approved and he is hereby constituted and appointed as Liquidating Trustee.

T.    _Reservation of Estate Claims_.  As set forth below, the Debtor has delineated the

Estate Claims to be retained in Article IX of the Plan.  This is reflected in Exhibit "B" to the Plan,

including the Exhibit 1 Notice, which sets forth the Estate Claims and Estate Defenses.  The

Exhibit 1 Notice includes the correct version of Schedule 1 to Exhibit "B" to the Plan.  The

retained Estate Claims specifically include all Estate Claims against each of the following

Persons:  (i) Vibrant, (ii) Vibrant Fort Worth, (iii) FPMC Services, (iv) Jefe Plover, (v) Todd

Furniss, (vi) Mary Hatcher, (vii) Dr. Wade N. Barker, and (viii) glendonTodd.  The Plan also

specifically retains as Estate Claims all causes of action against the Debtor's managers as well

as all Avoidance Claims against the Persons reflected as receiving transfers from the Debtor in

the Schedule "1" to the Exhibit "B" to the Plan.  The Court concludes that the identification and

retention of the Retained Estate Claims in the Plan is reasonable and appropriate and reflects a

proper exercise of the good faith business judgment of the Debtor.

Article IX of the Plan, including Exhibit "B" thereto, contain a specific and

unequivocal reservation of the Retained Causes of Action (including those described above) as

required under applicable Fifth Circuit authority.[2]  The Court concludes that it is in the best

interests of the holders of Claims, in order to maximize the value available to both the holders of

Allowed Claims, that the Retained Causes of Action be retained.  The Court further concludes

that all Estate Claims are expressly, specifically, and unequivocally retained and reserved

pursuant to Article IX (including the Exhibit "B" thereto) of the Plan in accordance with section

1123(b)(3)(B) of the Bankruptcy Code.  All Estate Claims are hereby reserved for the benefit of

the Liquidating Trustee and the Liquidating Trustee shall be entitled to file, prosecute and/or

---

[2] _In re Texas Wyoming Drilling, Inc.,_ 647 F.3d 547 (5th Cir. 2011); _In re United Operating, L.L.C.,_ 540 F.3d 351 (5th Cir. 2008).

settle each of the Retained Estate Claims so reserved in accordance with the terms of the Plan and the Liquidating Trust Agreement.

U.    *Transfer of Assets to the Liquidating Trust*.  Pursuant to section 6.3 of the Plan, all of the Assets, including all Estate Claims and Estate Defenses, shall be transferred to the Liquidating Trustee.  The transfer of all of the Estate's Assets to the Liquidating Trustee pursuant to the Plan is hereby approved as consistent with, and authorized by, section 1123(a)(5)(B).  The transfer of the Assets to the Liquidating Trustee, including all Estate Claims and Estate Defenses, will be fully effectuated through this Order as of the Effective Date without the necessity of any other or further assignment or transfer.

V.    *Termination of the Debtor*.  Pursuant to the Plan, the Debtor's corporate charter is to be surrendered and the Debtor dissolved after the Effective Date.  This is both necessary and appropriate for the administration of the Estate and the performance of the Plan.

W.    *Plan Modifications*.  After the entry of the Solicitation Order, but before Confirmation Hearing, the Debtor filed the First Supplement and the Schedule 1 Notice.

X.    *Claim Objections and Resolutions*.  Pursuant to the Plan, the Liquidating Trustee has the sole power and exclusive standing and authority to object to any Claim on behalf of the Liquidating Trust.  Without limiting the generality of the foregoing, the Liquidating Trustee shall have the power:  (a) to object to any Claim which may be asserted against the Liquidating Trust on any legal or equitable basis; (b) to seek equitable subordination of any Claim on any legal or equitable basis; (c) to assert any right of setoff or recoupment, including without limitation, any such right pursuant to section 553; (d) to assert any and all Estate Defenses to any Claim, whether legal or equitable, including any affirmative defenses or any right of setoff; (e) to assert all Estate Claims as a counterclaim against any Claim, whether arising out of the same or different transactions, both for an affirmative recovery and as an offset against any such Claim; and (f) to object to any Claims on the basis of section 502(d).  Vesting such exclusive power and standing in the Plan Trustee is reasonable and appropriate, is in the best interests of the

Creditors who are beneficiaries of the Liquidating Trust, and is authorized by, and in compliance with, section 1123(b)(3) of the Bankruptcy Code.

     Y.    *Plan Compliance with Bankruptcy Code*.  The Plan complies with the applicable provisions of the Bankruptcy Code, including the following:

     (i)    *Proper Classification – sections 1122, 1123(a)(1)*. The Plan designates four (4) Classes of Claims and Interests.  The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Based upon the record of the Confirmation Hearing and the record of this Bankruptcy Case, valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate among holders of Claims and Interests.  Consequently, the Plan satisfies both sections 1122 and 1123(a)(1).

     (ii)    *Specify Unimpaired Classes – section 1123(a)(2)*.  There is no unimpaired class so that section 1123(a)(2) of the Bankruptcy Code does not apply to the Plan.

     (iii)    *Specify Treatment of Impaired Classes – section 1123(a)(3)*.  Article IV of the Plan specifies the treatment of Claims and Interests which are included in the impaired Classes, thereby satisfying section 1123(a)(3).

     (iv)    *No Discrimination – section 1123(a)(4)*.  The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.  This satisfies section 1123(a)(4).

     (v)    *Implementation of Plan – section 1123(a)(5)*.  The Plan provides for the means for its implementation, including the provisions of Articles VI through XII of the Plan. This includes the transfer pursuant to section 6.3 of the Plan of all Assets to the Liquidating Trustee and the assumption by the Liquidating Trustee in section 6.5 of the Plan of all liabilities

and obligations to make Distributions under the Plan. The Plan provides reasonable, adequate and appropriate means for its implementation, thereby satisfying section 1123(a)(5).

(vi) *Selection of Officers and Directors – section 1123(a)(7)*. Prior to the Confirmation Hearing, the Debtor properly and adequately disclosed the identity and affiliations of the Liquidating Trustee. Because the Debtor will be terminated and its corporate charter surrendered, no other or further disclosure is required pursuant to section 1123(a)(7) regarding the Debtor's officers or managers.

(vii) *Additional Plan Provisions – section 1123(b)*. The Plan's additional provisions are appropriate and are not inconsistent with the applicable provisions of the Bankruptcy Code.

(viii) *Satisfaction of section 1123(a) and (b)*. The relief provided in the Plan is fair and necessary for the orderly implementation of the Plan, the administration of the Debtor's estate, the making of Distributions to holders of Allowed Claims who are the beneficiaries of the Liquidating Trust. Therefore, the Plan satisfies the requirements of sections 1123(a) and (b). Sections 1123(c) and (d) are not applicable to the Plan.

Z. *Compliance with Fed. R. Bankr. P. 3016*. The Plan is dated and identifies the Debtor as the proponent, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Court satisfies Bankruptcy Rule 3016(b). Further, the Plan, Disclosure Statement and Plan Notice describe in specific and conspicuous language all acts to be enjoined and identify the entities that are subject to the injunction, including with respect to the Plan Injunction, thereby satisfying Bankruptcy Rule 3016(c) to the extent applicable.

AA. *Compliance with Fed. R. Bankr. P. 3017*. Debtor has given notice of the Confirmation Hearing as required by Bankruptcy Rule 3017 and the Solicitation Order. The Solicitation Materials prescribed by the Plan were transmitted to the interested parties entitled to vote or provisionally allowed to vote on the Plan in accordance with Bankruptcy Rule 3017(d).

BB. _Compliance with Fed. R. Bankr. P. 3018_. The solicitation of votes to accept or reject the Plan satisfies Bankruptcy Rule 3018. The Plan was transmitted to all holders of Claims and Interests entitled to vote or provisionally allowed to vote on the Plan, sufficient time was prescribed for such parties to accept or reject the Plan, and the Solicitation Materials used and solicitation procedures followed comply with sections 1125 and 1126, thereby satisfying the requirements of Bankruptcy Rule 3018. Further, the Debtor has filed the Ballot Certification at least one day prior to the Confirmation Hearing, thereby satisfying N.D. Tex. L.B.R. 3018-1.

CC. _Compliance with Title 11 – section 1129(a)(1)_. The Plan complies with the applicable provisions of Title 11 thereby satisfying section 1129(a)(1).

DD. _Debtor's Compliance with Bankruptcy Code – section 1129(a)(2)_. The Debtor, as the proponent of the Plan, has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2).

EE. _Plan Proposed in Good Faith – section 1129(a)(3)_. The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3). In determining that the Plan has been proposed in good faith, the Court has examined and considered the totality of the circumstances surrounding the formulation of the Plan, including both the record at the Confirmation Hearing and the record of this Bankruptcy Case. Furthermore, the Plan is supported by the Committee. As a consequence, the Court has concluded that the Debtor has proposed the Plan for legitimate and honest purposes.

FF. _Payments for Services or Costs and Expenses – section 1129(a)(4)_. All payments made by the Liquidating Trustee under the Plan for services or for costs and expenses incurred prior to the Confirmation Hearing in or in connection with this Bankruptcy Case or in connection with the Plan and incident to this Bankruptcy Case, have either been approved or are subject to final approval of the Court pursuant to the terms of the Plan, thereby satisfying section 1129(a)(4).

GG. *Directors, Officers and Insiders – section 1129(a)(5)*. The Debtor has complied with section 1129(a)(5). The identity and affiliations of the proposed Liquidating Trustee has been fully disclosed. As the Debtor will be dissolved and all Assets transferred to the Liquidating Trustee, no further disclosure is required regarding Debtor's officers, managers or insiders.

HH. *No Rate Changes – section 1129(a)(6)*. The Debtor ceased to operate during May, 2016. There is no regulatory commission having jurisdiction after confirmation of the Plan over the rates of the Debtor and no rate change provided for in the Plan requiring approval of any such commission. Therefore, section 1129(a)(6) is not applicable to the Debtor or the Plan.

II. *Best Interests of Creditors – section 1129(a)(7)*. The Plan satisfies section 1129(a)(7). The liquidation analysis included in the Disclosure Statement and the exhibits and evidence proffered or adduced at the Confirmation Hearing regarding the liquidation of the Debtor's assets were persuasive and credible. The record establishes that each holder of an impaired Claim has either accepted the Plan or will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code as of the Effective Date. Class 4 Interests in the Debtor are cancelled on the Effective Date. However, because the holders of such Interests would receive nothing through a Chapter 7 liquidation as of the Effective Date, the requirement of section 1129(a)(7) is also satisfied as to all holders of Class 4 Interests.

JJ. *Acceptance or Rejection by Certain Classes – section 1129(a)(8)*. The four (4) impaired Classes of Claims and Interests voted as follows to accept or reject the Plan:

    a)    Class 1 - voted to accept the Plan;

    b)    Class 2 - no Ballots were cast in this Class;

    c)    Class 3 - no Ballots were cast in this Class; and

d) Class 4 is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

Consequently, section 1129(a)(8) is satisfied as to Class 1 which has overwhelmingly voted to accept the Plan. Based on the failure of Class 3 to accept the Plan, the Court has made a "cram down" analysis pursuant to section 1129(b) which is set forth below. However, based upon the evidence at the Confirmation Hearing, it does not appear that there are any unsatisfied Class 2 Claims and that this Class is an empty one. However, the Plan also satisfies the requests for cram down as to Class 2 as well.

KK. *Treatment of Administrative, Priority, and Tax Claims – U.S.C. Section 1129(a)(9).* Article III of the Plan addresses the treatment of unclassified Claims. The treatment of Administrative Claims and Priority Tax Claims pursuant to Article III of the Plan and the treatment of Priority Non-Tax Claims pursuant to section 3.2 of the Plan satisfies the requirements of sections 1129(a)(9)(A), (B) and (C).

LL. *Acceptance by Impaired Class of Claims – section 1129(a)(10).* Classes 1, 2 and 3 are all impaired Classes of Claims. Class 1 has voted to accept the Plan in accordance with section 1126(e) of the Bankruptcy Code. The Ballot Tabulation excludes the votes of any insiders included in such Classes. Therefore, the requirement of section 1129(a)(10) that at least one Class of Claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider, has been satisfied.

MM. *Feasibility – section 1129(a)(11).* The Plan is a liquidation plan which provides adequate and appropriate means for its implementation of the liquidation through the terms of the Liquidating Trust. Accordingly, to the extent applicable to a liquidating plan, the Court finds that the Plan satisfies the requirements of section 1129(a)(11).

NN. *Payment of Fees – section 1129(a)(12).* All fees payable under 28 U.S.C. section 1930 on or before the Effective Date, as determined by the Court, have been paid or will be paid on the Effective Date, thus satisfying the requirements of section 1129(a)(12).

OO.   *Continuation of Retiree Benefits – section 1129(a)(13)*.  The Debtor does not provide any retiree benefits within the meaning of section 1114.  Thus, the requirements of section 1129(a)(13) are not applicable to the Plan.

PP.   *Domestic Support Obligations – section 1129(a)(14)*.  The Debtor is not and individual and is not required by judicial or administrative order, or by statute, to pay a domestic support obligation. Thus, the requirements of section 1129(a)(14) of the Bankruptcy Code are not applicable for the Plan.

QQ.   *Debtor is Not an Individual – section 1129(a)(15)*.  The Debtor is not an individual so that section 1129(a)(15) does not apply to the Plan.

RR.   *Cram Down – section 1129(b)*.  Classes 3 and 4 are both impaired and either failed to vote to accept the Plan (Class 3) or are deemed to have rejected the Plan (Class 4). Consequently, the Court addresses the application of the cram down provisions of section 1129(b)(2)(i) and (ii) to Classes 3 and 4 as follows:

(i)   The Plan does not discriminate unfairly, and is fair and equitable, as to each Class which has not voted to accept the Plan.

(ii)   The Plan has not been accepted by Class 3.  As to Class 3, the Plan is confirmable pursuant to section 1129(b)(2)(B)(ii).  All Interests in the Debtor are cancelled and no holder of a junior Claim or a cancelled Interest will receive any Distribution pursuant to the Plan.

(iii)   As to the holders of Class 4 Interests, the Plan is confirmable pursuant to section 1129(b)(2)(B)(iii).  The holders of any junior Interests will not receive or retain any property on account of such junior Interest.

No Ballot was cast by any member of Class 2.  Based on the testimony at the Confirmation Hearing, it does not appear that any unsatisfied Class 2 Claims exist and that this is an employ Class.  However, the treatment of Claims proposed in section 4.2 of the Plan satisfies the requirements for cram down under section 1129(b) if any such unsatisfied Class 2 Claims exist.

Based on the foregoing, the Plan satisfies the applicable requirements of section 1129(b)(2) as each Class which did not vote to accept the Plan.

      SS.    *Only One Plan – section 1129(c)*. This Confirmation Order confirms a single plan. Accordingly, the requirements of section 1129(c) have been satisfied.

      TT.    *Principal Purpose – section 1129(d)*. The Court has found that the Plan was proposed in good faith. Consistent with this, the Court concludes that the principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of Section 5 of the Securities Act of 1933, and no governmental unit has objected to the confirmation of the Plan on any of such grounds. The Plan therefore satisfies the requirements of section 1129(d).

      UU.    *Section 1129(e)*. This provision does not apply to the Debtor or this Plan.

      VV.    *Executory Contracts*. The Debtor has exercised reasonable business judgment in determining whether to assume or reject each of the Executory Contracts as set forth in Article XII of the Plan. Upon the Effective Date, the assumption, assumption and assignment, or rejection of each such Executory Contract as reflected in, or subject to, Article XII of the Plan shall be legal, valid and binding upon the Debtor, the Estate, the Liquidating Trustee and all non-debtor counterparties to each such Executory Contract. Any Cure Claim held by any counterparty to an assumed Executory Contract shall be determined and paid pursuant to Article XII of the Plan. Any Rejection Claim based upon an Executory Contract rejected by the Debtor pursuant to the Plan must be timely filed in accordance with section 12.3 of the Plan and, if timely filed, will be administered and treated as a Class 1 Claim. Except as otherwise ordered by the Court, or agreed in writing by the Liquidating Trustee, objections to any Cure Claim or Rejection Claim shall be handled and resolved based on the procedures set forth in the applicable provision of the Plan.

      Pursuant to section 12.1 of the Plan, the Debtor has filed the First Supplement to assume certain Executory Contracts. The Debtor seeks to assume the following Executory

Contracts (collectively the "Assumed Executory Contracts"). The Assumed Executory

Contracts, and no others, are deemed as assumed pursuant to this Order:

| Counterparty | Contract |
|---|---|
| ScanSTAT Technologies, L.P.<br>288 S. Main Street, Suite 600<br>Alpharetta, GA 30009 | Agreement from Services dated August 31, 2016 |
| Healthcare Receivables Group, Inc.<br>318 Nancy Lynn Lane, Suite 21<br>Knoxville, TN 37919<br>Attn: Neil Koonce, President | Agreement dated August 8, 2016 |
| SOURCECORP BPS, Inc.<br>2701 E. Grauwyler<br>Irving, TX 75061 | Master Services Agreement effective as of October 1, 2016 |
| Financial Corporation of America<br>12515 Research Blvd., Building 2, Suite 100<br>Austin, TX 78759 | Agreement dated August 2, 2016 |
| Accordias Healthcare Services, LLC<br>1101 Kermit Drive, Suite 700<br>Nashville, TN 37217 | Account Receivables Management Services Agreement dated May 20, 2016 |
| McKesson Technologies, Inc.<br>#130-10711 Cambie Road<br>Richmond, BC<br>Canada V6X 3G5 | Image Transfer Agreement |

The assumption and assignment to the Liquidating Trustee of the Assumed Executory Contracts

is hereby approved as a valid exercise of the Debtor's good faith business judgment. Any

amount owing under any of the Assumed Executory Contracts on the Effective Date shall be

treated as an Ordinary Course Claim subject to section 3.1 of the Plan. Any amount owing

under any of the Assumed Executory Contracts from and after the Effective Date shall be

treated as Trust Expenses. This satisfies the requirements of section 365(f) to assume and

assign the Assumed Executory Contracts to the Liquidating Trustee.

WW. *Exemptions from Taxes*. The Court finds and concludes that, in accordance with

section 1146(a) of the Bankruptcy Code, any transfers pursuant to the Plan shall not be subject

to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage

tax, real estate transfer tax, mortgage recording tax, or other similar tax or government assessment.

XX. _Settlement; Releases_. The Court finds and concludes that, pursuant to Bankruptcy Rule 9019 and in consideration of the Distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all impaired Claims and Interests. Such settlements and compromises are made in exchange for consideration and are in the best interests of the holders of impaired Claims and Interests, are within the range of possible litigation outcomes, are fair, equitable, and reasonable, and are integral elements necessary to the liquidation of the Debtor in accordance with the Plan.

YY. _Plan Injunction_. The Debtor is not eligible for a discharge pursuant to section 1141(d)(3). Consequently, section 14.3 of the Plan contains the Plan Injunction. The Plan Injunction is necessary and appropriate to facilitate the orderly distribution of the Assets pursuant to the Plan through the Liquidating Trust. The Plan Injunction constitutes an essential and integral part of the Plan without which the holders of Claims against the Debtor could potentially interfere with the Liquidating Trustee's performance of his duties under the Liquidating Trust Agreement. The Plan Injunction protects the best interests of the holders of Allowed Claims who are the beneficiaries of the Liquidating Trust and promotes and facilitates the efficient administration of the Liquidating Trust in accordance with the terms of the Plan. Consequently, the Plan Injunction is hereby approved pursuant to sections 105(a) and 1123(a)(5) and (7) and shall be incorporated into, and enforced, as an integral part of this Order.

ZZ. _Retention of Jurisdiction_. This Court finds and concludes that this Court's retention of jurisdiction as set forth herein and in the Plan comports with 28 U.S.C., sections 157 and 1334. Consequently, the Court may properly retain jurisdiction over the matters set forth in Article IX of the Plan.

AAA. _Implementation of the Plan_. The Liquidating Trust, in conjunction with any other Plan Documents and this Order, provide reasonable and sufficient means to fully and efficiently

implement the Plan. All documents necessary to implement the Plan have been filed with the Court and made available for review and objection by Creditors, holders of Interests and other interested parties, including the Liquidating Trust Agreement. Such documents have been negotiated and prepared in good faith and at arm's length and are in the best interests of the Debtor and its estate and shall, upon execution and subject to the occurrence of the Effective Date, be valid, binding, and enforceable in accordance with their terms. Such documents are not in conflict with federal or state law.

BBB. *Plan Supplements*. The First Supplement and the Schedule 1 Notice are hereby approved. The First Supplement identifies certain Executory Contracts to be assumed. The Schedule 1 Notice correctly reflects the Persons who received transfers from the Debtor. Neither the First Supplement nor the Schedule 1 Notice modifies the Plan or affects the rights of Creditors entitled to vote in a material way and reflects technical issues or corrections. Consequently, no additional disclosure or resolicitation is necessary.

CCC. *Satisfaction of Confirmation Requirements*. The Debtor has established by the preponderance of the evidence that the Plan satisfies all requirements for confirmation of the Plan, including those set forth in sections 1123 and 1129.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1. Findings of Fact and Conclusions of Law. The above-referenced findings of fact and conclusions of law are incorporated by reference as though fully set forth herein.

2. Objections to Plan. The only objection to the Plan, the UST Objection, has been resolved based upon paragraphs 11 and 12 below.

3. Confirmation of Plan. The Plan is CONFIRMED in accordance with section 1129 of the Bankruptcy Code, and all terms and conditions set forth in the Plan, as modified by the Modifications, are hereby APPROVED. The terms of the Plan are incorporated by reference into, and as an integral part of, this Confirmation Order. The Liquidating Trust Agreement is an

integral part of the Plan. As a consequence, the terms of the Liquidating Trust Agreement are hereby incorporated by reference into, and as an integral part of, this Confirmation Order.

4. <u>Plan Implementation</u>. Upon the Effective Date of the Plan, the Debtor through the CRO is hereby authorized and directed to take all actions necessary or appropriate to implement, effectuate or consummate the Plan, the terms of this Confirmation Order and the transactions respectively contemplated therein, and to otherwise fully perform and execute its duties under the Plan or this Confirmation Order. In the event of an appeal of this Confirmation Order, the Debtor, CRO and the Liquidating Trustee are all hereby authorized and directed to take all steps necessary to make the Plan effective and, from and after the Effective Date, execute their duties, responsibilities and obligations under the Plan, this Confirmation Order and the Plan Documents unless until this Confirmation Order is stayed by order of a court of appropriate jurisdiction.

5. <u>Approval of Plan Documents</u>. The form and substance of the Plan Documents, including, without limitation, the Liquidating Trust, are all hereby APPROVED. The Debtor and CRO are authorized and directed, without the need for further corporate or other organizational action or further order or authorization of this Court, to take such actions and do all things as may be necessary or required to implement and effectuate the Plan Documents and to make the Plan effective.

6. <u>Creation of Liquidating Trust</u>. On the Effective Date, the Liquidating Trust shall be created and the Liquidating Trustee shall be deemed as appointed and constituted as the as the trustee of the Liquidating Trust. The CRO shall execute and deliver the Liquidating Trust Agreement on behalf of the Debtor as of the Effective Date. Clifford A. Zucker is hereby appointed as the Liquidating Trustee and authorized and directed to accept the delivery of the Liquidating Trustee Agreement from the CRO as of the Effective Date. From and after the Effective Date, the Liquidating Trustee shall be fully vested with, and entitled to exercise and discharge, all rights, powers, duties and responsibilities pursuant to the Liquidating Trust

Agreement. The tax treatment of the Liquidating Trust and its Distributions to beneficiaries shall be as set forth in the Plan and the Liquidating Trust Agreement, including the treatment of the Liquidating Trust as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations.

7.    <u>Transfer of Assets and Assumption of Liabilities</u>.  On the Effective Date, without the execution of any other or further document or any further order by the Court: (i) all Assets of the Estate shall be deemed as fully, completely and irrevocably transferred to, and vested in, the Liquidating Trustee in accordance with section 6.3 of the Plan and the Plan Documents; and (ii) the Liquidating Trustee shall assume the liability for, and the obligation to make, all Distributions or payments on account of all Allowed Claims as provided in section 6.5 of the Plan. The Assets shall not re-vest in the Debtor or the Estate.

8.    <u>Estate Claims and Estate Defenses</u>.  Upon the Effective Date, the necessity of the execution of any further documents or further order of the Court, all Estate Claims and Estate Defenses, including without limitation all D&O Claims, shall be deemed as fully, completely and irrevocably transferred to, and vested in, the Liquidating Trustee. The Liquidating Trustee shall have the exclusive standing and authority to assert, prosecute, collect, compromise and settle all Estate Claims and Estate Defenses pursuant to the terms of the Plan and Liquidating Trust Agreement.

9.    <u>Executory Contracts</u>.  The Debtor's assumption and assignment to the Liquidating Trustee of the Assumed Contracts is hereby approved. The Assumed Contracts shall be deemed a part of the Assets assigned to the Liquidating Trustee. Any sums payable on any Assumed Executory Contract as of the Effective Date shall be treated as Ordinary Course Claims and all post-Effective Date sums so payable shall be treated as Trust Expenses. All other Executory Contracts are deemed as rejected as of the Effective Date. All Rejection Claims must be filed within the time specified in section 12.3 of the Plan, failing which any such

Rejection Claim shall be forever barred and precluded from receiving any Distribution pursuant to the Plan.

10.     Discharge.  The Debtor is not eligible for a discharge pursuant to the Plan based on section 1141(d)(3).  The Court has approved the Plan Injunction as an essential and integral part of the Plan.  The Plan Injunction, as set forth in section 14.3 of the Plan, reads as follows:

> PLAN INJUNCTION.  THIS SECTION IS REFERRED TO HEREIN AS THE "PLAN INJUNCTION."  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR, THE ESTATE OR ANY OF THE ASSETS THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE HEREBY PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING: (i) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT OR OTHER PROCEEDING OF ANY TYPE OR NATURE AGAINST THE LIQUIDATING TRUSTEE, LIQUIDATING TRUST, TRUST ASSETS , DEBTOR OR THE ESTATE, WITH RESPECT TO ANY SUCH CLAIM OR INTEREST ARISING OR ACCRUING BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM OR INTEREST AGAINST THE ESTATE, LIQUIDATING TRUSTEE, LIQUIDATING TRUST, DEBTOR OR TRUST ASSETS; (ii) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCE, RIGHT OR BURDEN, EITHER DIRECTLY OR INDIRECTLY, AGAINST THE LIQUIDATING TRUSTEE, LIQUIDATING TRUST OR ANY TRUST ASSETS, OR (iii) TAKING ANY ACTION IN RELATION TO THE DEBTOR, ESTATE, LIQUIDATING TRUSTEE, LIQUIDATING TRUST OR THE TRUST ASSETS, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THIS PLAN APPLICABLE TO SUCH CLAIM OR INTEREST.  THE PLAN INJUNCTION SHALL ALSO BE INCORPORATED INTO THE CONFIRMATION ORDER.

The Plan Injunction is hereby incorporated into this Order as an essential and integral term hereof so that the Plan Injunction shall be fully binding upon, and enforceable against, all Persons through and as a part of this Order.

11.     Notwithstanding anything to the contrary in the Plan or Trust Agreement:  (a) third party professionals employed by the Liquidating Trustee shall not be released or exculpated from any losses, claims, damages, liabilities, or expenses arising from their duties and services provided to the Liquidating Trustee; and (b) any third party professionals employed

by the Liquidating Trustee shall only be entitled to be indemnified by the Liquidating Trust to the extent provided by applicable law.

12.     Notwithstanding anything to the contrary in the Plan or Confirmation Order, nothing in the Plan or Confirmation Order (including the Plan Injunction): (a) releases any Person other than the Liquidating Trustee, Liquidating Trust, Trust Assets, Debtor, or the Estate (collectively, the "Released Parties") from any Claim or cause of action held by a Governmental Unit; or (b) enjoins, limits, impairs or delays any Governmental Unit from commencing or continuing any Claim, suit, action, proceeding, cause of action, or investigation against any Person other than the Released Parties. Moreover, nothing in the Plan or in the Confirmation Order shall discharge, release, enjoin or otherwise bar (i) any liability of the Released Parties to a Governmental Unit arising on or after the Confirmation Date with respect to events occurring after the Confirmation Date, provided that the Released Parties reserve the right to assert that any such liability is a Claim that arose on or prior to the Confirmation Date and constitutes a Claim that is subject to the Plan Injunction, (ii) any liability to a Governmental Unit that is not a Claim subject to the deadlines for filing proofs of claim, (iii) any valid right of setoff or recoupment of a Governmental Unit, and (iv) any police or regulatory action by a Governmental Unit. In addition, nothing in the Plan or Confirmation Order discharges, releases, precludes or enjoins any environmental liability to any Governmental Unit that any Person other than the Released Parties would be subject to as the owner or operator of the property after the Effective Date. For the avoidance of any doubt, nothing in this paragraph shall be construed to limit the application of the Plan Injunction to any Claim which was subject to any bar date applicable to such Claim.

13.     Priority or Secured Tax Claims. The treatment of Secured Priority or Class 2 Tax Claims is specified in the Plan. Nothing in the Plan or this Confirmation Order shall modify or affect the Lien rights of a Taxing Authority under applicable non-bankruptcy law. In the event of a default on the payment of a Priority Tax Claim under the Plan, the Taxing Authority to which

the payment is owed may pursue all administrative and judicial remedies under applicable law

to collect the unpaid Priority Tax Claim or Secured Tax Claim.

14.     Class 2 Property Tax Claims.  Tarrant County has filed Proof of Claim no. 1 ("Tax

Claim") for property taxes assessed against the Debtor's business personal property by various

Taxing Authorities.  Virtually all of the Debtor's equipment was leased from either the FP

Equipment Lessors or Centennial.  Consequently, pursuant to the Forest Park Stipulation and

the Centennial Stipulation, the FP Equipment Lessors and Centennial assumed the

responsibility for the satisfaction of such Class 2 Property Tax Claims by the Taxing Authorities

for property taxes assessed against the FP Lessor Assets and the Centennial Assets.  Based

on an email from the counsel for Tarrant County, the payment for these property taxes had been

received and posted as of April 4, 2017 and Tarrant County has filed a *Notice of Withdrawal of

Proof of Claim* [Docket no. 687] withdrawing Proof of Claim 1-1.  In addition, the record reflects

that the Solicitation Materials were forwarded to, and received by, counsel for Tarrant County

which filed no objection to the Plan, presumably because the taxes had been paid.  The Plan

provides in sections 4.2(b) and (c) that no Distribution shall be made to any Taxing Authority on

account of the FP Lessor Property Taxes or the Centennial Property Taxes.  Consequently, the

record indicates that the Class 2 Tax Claims have been satisfied and that there are no known

unsatisfied Class 2 Property Tax Claims.  Consequently, for purposes of this Order, Class 2 is

treated as an empty Class.

15.     Automatic Stay.  The automatic stay pursuant to section 362 shall remain in

effect until the Effective Date as to Debtor and all Assets.  Upon the Effective Date, all

injunctions or stays provided for in this Bankruptcy Case under sections 105 and 362 or

otherwise and in existence on the Effective Date shall terminate, and the Plan Injunction shall

become effective immediately without the necessity of further order by the Court.

16.     Setoffs.  Except as otherwise expressly provided for in the Plan or this

Confirmation Order, pursuant to the Bankruptcy Code (including section 553, applicable non-

bankruptcy law, or as may be agreed to by the holder of a Claim, the Liquidating Trustee may offset against any Allowed Claim and any Distribution to be made pursuant to the Plan on account of such Allowed Claim, any and all claims, rights, Estate Defenses and Estate Claims that Debtor may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the Allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Liquidating Trustee of any such claims, rights, Estate Defenses or Estate Claims that the Liquidating Trustee may possess against such Claimant. Alternatively, any holder of a Claim, to the extent allowed under section 553 of the Bankruptcy Code and applicable non-bankruptcy law, may offset against any claims, rights, Estate Defenses or Estate Causes of Action of any nature that the Liquidating Trustee may hold or assert against the holder of such Allowed Claim.

17.     Recoupment.  In no event shall any holder of a Claim or Interest be entitled to recoup any Claim or Interest against any claim, right, Estate Defense or Estate Claim by the Liquidating Trustee, unless: (i) such holder actually provides notice thereof in writing to the Liquidating Trustee of its intent to perform a recoupment; and (ii) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment.  Notwithstanding the foregoing, nothing in the Plan shall be deemed to deprive or prevent the Liquidating Trustee or the holder of such Claim or Interest from seeking a judicial determination from the Bankruptcy Court regarding the validity and extent of such Claimant's recoupment rights.

18.     Retained Causes of Action.  The reservation of the Estate Claims is hereby APPROVED.  The reservation of the Estate Claims and Defenses in Article IX of the Plan (including pursuant to the Exhibit "B" to the Plan) is express, specific and unequivocal, and constitutes an effective retention of claims under section 1123(b)(3)(B).  Without limiting the generality of the foregoing, the retention of all Estate Claims and Estate Defenses is explicitly approved as express, specific, and unequivocal in relation to all Estate Claims and Estate

Defenses relating to Vibrant, Vibrant Fort Worth, FPMC Services, Todd Furniss, Mary Hatcher, Dr. Wade Baker and Jefe Plover.

19. <u>Distributions Under Plan</u>. All Distributions under the Plan shall be made by the Liquidating Trustee.

20. <u>Exemption from Certain Taxes</u>. Section 1146(a) shall apply to the transfer of all Assets to the Liquidating Trustee pursuant to the Plan.

21. <u>Governmental Approvals Not Required</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any State or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement and any documents, instruments or agreements, and any amendments or modifications thereto.

22. <u>Termination of the Official Creditors' Committee</u>. The Committee shall be terminated as of the Effective Date pursuant to section 6.7 of the Plan. The retention of Professionals retained by the Committee shall likewise terminate as of the Effective Date; <u>provided</u>, <u>however</u>, that the Committee shall continue to exist and its Professionals shall continue to be retained after the Effective Date with respect to fee applications filed pursuant to section 3.4(d) of the Plan and motions seeking enforcement of the provisions of the Plan and Confirmation Order.

23. <u>Dissolution of the Debtor</u>. The Liquidating Trustee is hereby authorized and directed to dissolve the Debtor and to terminate its corporate charter as soon after the Effective Date as practicable. The Liquidating Trustee is hereby authorized to execute all documents, and take all steps necessary, to effect the dissolution of the Debtor.

24. <u>Advisory Committee</u>. Pursuant to section 6.8 of the Plan, the Advisory Committee shall be formed and constituted as of the Effective Date and shall have such rights and duties as set forth in the Plan and Liquidating Trust Agreement.

25.    <u>Termination of the CRO</u>.  The CRO shall be automatically discharged from any further duties and responsibilities as of the Effective Date, although without prejudice to the CRO's right to file an appropriate final fee application in accordance with section 3.1(e) of the Plan.

26.    <u>Professional Fee Claims</u>.  All final requests for compensation or reimbursement by any Professional pursuant to sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code must be filed no later than sixty (60) days after the Effective Date in accordance with section 3.1(d) of the Plan.

27.    <u>Texas Comptroller</u>.  Notwithstanding anything else to the contrary in the Plan, this Order or any document implementing the Plan, these provisions apply to the claims of the Texas Comptroller of Public Accounts (the "<u>Texas Comptroller</u>"):

(a)    The Texas Comptroller's rights of setoff are expressly preserved and shall not be altered or impaired;

(b)    The Plan shall not be construed to create any setoff or recoupment rights in favor of the Debtors against the Texas Comptroller;

(c)    Nothing set forth in the Plan or this Order shall affect or impair any rights of the Texas Comptroller to pursue any claims, rights, causes of action or any other remedies the Comptroller may have against any non-debtor third parties; and

(d)    The Texas Comptroller shall not be required to file any proof of claim, motion or request for payment in order to be paid any Administrative Claims that arise in the ordinary course of the Debtors' business, including postpetition taxes incurred by the Debtors after the Petition Date (in accordance with § 503(b)(1)(B)-(D), which shall be paid in accordance with § 1129(a)(9)(A) or, if not due on the Effective Date, in the ordinary course of business in accordance with applicable law.  Nothing contained in this Plan or Order shall alter the duty of the Debtor or Liquidating Trustee to timely file all required postpetition tax returns, or timely file a request for extension, and will timely pay all postpetition taxes owed to the Texas Comptroller,

including any postpetition penalties and interest, which accrue subsequent to the Petition Date or following the confirmation of the Plan in the ordinary course of business.

28. <u>Post-Effective Date Reporting</u>. From and after the Effective Date, the Liquidating Trustee shall be responsible for all reports to be filed with the Court, including any quarterly operating reports.

29. <u>Other Administrative Claims</u>. No later than thirty (30) calendar days after the Effective Date, any Person seeking allowance of an Administrative Expense pursuant to sections 3.1 of the Plan, including any substantial contribution claims, must file with the Court and serve upon the Liquidating Trustee and the Committee a written notice of such Administrative Expense in compliance with section 3.1 of the Plan. Any notice of such an Administrative Expense, if properly filed and served pursuant to section 3.1, shall be Allowed unless an objection is filed and served within thirty (30) days after the filing and service of the notice of Claims; <u>provided</u>, <u>however</u>, the above portions of this paragraph shall not apply to (i) any claim for an Administrative Expense by Professionals which are subject to section 3.1(d) of the Plan and paragraph 26 above of this Order, (ii) any Claim for an Administrative Expense which has already been Allowed, (iii) any liability incurred by the Debtor in the ordinary course of its business, or (iv) any Claim for an Administrative Expense which the Liquidating Trustee has otherwise agreed in writing to pay. Any objection to a notice seeking the allowance of an Administrative Expense filed pursuant to section 3.1 shall be subject to Article III of the Plan.

30. <u>Filing and Recording</u>. This Confirmation Order is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any document or instruments. Each and every federal, state and local government agency is hereby directed

to accept any and all documents and instruments necessary, useful or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any recoding tax, stamp tax, transfer tax or similar tax imposed by state or local law.

31. <u>Inconsistency between Documents</u>. In the event of an inconsistency between the Plan and the Disclosure Statement, the Plan shall control. In the event of any inconsistency between the Plan or Disclosure Statement and this Confirmation Order, this Confirmation Order shall control.

32. <u>References to Plan Provisions.</u> The failure to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of any such provision, it being the intent of the Court that the Plan be APPROVED and confirmed in its entirety.

33. <u>Reversal.</u> If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Liquidating Trustee's receipt of written notice of any such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan (including the Plan Documents) and any amendments or modifications thereto.

34. <u>Applicable Non-Bankruptcy Law.</u> Pursuant to sections 1123(a) and 1142(a), the provisions of the Plan and this Confirmation Order shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

35. <u>Conditions Precedent to Effective Date.</u> The Plan shall not become effective until the Conditions Precedent have been satisfied or waived, as determined by the Debtor in the

exercise of its sole discretion. Any of the Conditions Precedent may be waived by the Debtor in the exercise of its sole discretion by filing the *Notice of Effective Date* as required below.

36.     <u>Notice of the Effective Date</u>. As soon as practicable after the Conditions Precedent have been satisfied or waived, the Liquidating Trustee shall file a *Notice of Effective Date* with the Bankruptcy Court and serve a copy of such notice pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c) on all holders of Claims and Interests and the U.S. Trustee by causing such notice to be deposited in the United States mail by first-class mail, postage prepaid, notifying such parties of the Effective Date of the Plan and certain deadlines, including those established under sections 3.1(c), 3.1(d) and 12.3 of the Plan. The filing of the *Notice of Effective Date* shall conclusively establish that all Conditions Precedent have been satisfied or waived by the Debtor and shall constitute adequate and sufficient notice to all parties entitled thereto of the occurrence of the Effective Date.

37.     <u>Jurisdiction</u>. This Court hereby retains jurisdiction from and after the Effective Date as set forth in Article XV of the Plan.

38.     <u>No Stay</u>. There is no stay as to this Order which shall become effective immediately upon entry.

### END OF ORDER ###

**SUBMITTED BY:**

/s/ J. Robert Forshey
J. Robert Forshey
State Bar No. 07264200
Jeff P. Prostok
STATE BAR NO. 16352500
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
bforshey@forsheyprostok.com
jprostok@forsheyprostok.com

ATTORNEYS FOR DEBTOR
AND DEBTOR IN POSSESSION

L:\BFORSHEY\Forest Park FW (C11) #5770\Pleadings\Confirmation Order 5.1.17 BF.docx

# EXHIBIT "A"

to

*Findings of Fact, Conclusions of Law, and Order Confirming the Plan of Liquidation for Forest Park Medical Center at Fort Worth, LLC*

**EXHIBIT "A"**
to
**First Amended Plan of Liquidation**

**LIQUIDATING TRUST AGREEMENT**

This Liquidating Trust Agreement (the "**Liquidating Trust Agreement**") is made this ___ day of _____, 2017, by and among Forest Park Medical Center at Fort Worth, LLC (the "**Debtor**"), and Clifford Zucker, a partner in CohnReznick Advisory as trustee for the FPMC Fort Worth Liquidating Trust (the "**Liquidating Trustee**").

**RECITALS**

**WHEREAS**, on February 10, 2016, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**"); and

**WHEREAS**, the Debtor filed its *Plan of Liquidation for Forest Park Medical Center at Fort Worth* dated February 16, 2017 on February 16, 2017 (as the same may be further modified, amended, and/or supplemented from time to time, the "**Plan**");[1] and

**WHEREAS**, on _____, 2017, the Bankruptcy Court entered an order confirming the Plan (the "**Plan Confirmation Order**"); and

**WHEREAS**, the Plan's Effective Date occurred on _____, 2017; and

**WHEREAS**, the Plan contemplates, on the Effective Date, (i) the creation of a liquidating trust (the "Liquidating Trust") and the creation of the beneficial interests in the Liquidating Trust of holders of Allowed Claims or Allowed Interests entitled to Distributions as described in the Plan (collectively, the "**Beneficiaries**" and each, individually, a "**Beneficiary**"), and (ii) the Liquidating Trust will be vested with all Assets of the Debtor and the Estate as of the Effective Date, including without limitation: (i) all Estate Cash, (ii) all Estate Accounts Receivable, (iii) all Estate Claims, (iv) all Estate Defenses, (v) all rights under Estate Insurance Policies, (vi) all of the Estate's rights under both the Forest Park Stipulation and the Centennial Stipulation, (vii) any Executory Contracts expressly assumed under the Plan, (viii) all of the Estate's rights pursuant to the THR Settlement Agreement and the PropCo Settlement Agreement, (ix) all D&O Claims, and (x) all of the Estate's rights under any Estate Contract (all such Assets vesting in the Liquidating Trust are collectively referred to as the "**Liquidating Trust Assets**"), to be liquidated and distributed to the Beneficiaries, as set forth in the Plan; and

**WHEREAS**, the Plan contemplates that, pursuant to Treasury Regulation Section 301.7701-4, the Liquidating Trust shall be created for the primary purpose of liquidating the Liquidating Trust Assets and for making Distributions in accordance with the Plan and this Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Liquidating Trust; and

**WHEREAS**, the Liquidating Trust is intended to qualify as a grantor trust for U.S. federal income tax purposes under the Internal Revenue Code of 1986, as amended (the "**IRC**"), with the Beneficiaries to be treated as if they had received a distribution from the Estate of an undivided interest in each of the Liquidating Trust Assets (to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Liquidating Trust, and the Beneficiaries will be treated as the grantors and owners thereof; and

**WHEREAS**, the Liquidating Trustee has agreed to serve as such upon the terms and subject to the conditions set forth in this Liquidating Trust Agreement.

**NOW, THEREFOR**, in accordance with the Plan, in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I
## DECLARATION OF TRUST

1.1     <u>Creation and Purpose of the Liquidating Trust</u>.  The Debtor and the Liquidating Trustee hereby create the Liquidating Trust for the primary purpose of liquidating the Liquidating Trust Assets and making Distributions in accordance with the Plan and this Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.  The Liquidating Trust will not be deemed a successor-in-interest of the Estate for any purpose other than as specifically set forth in the Plan and this Liquidating Trust Agreement.

1.2     <u>Declaration of Trust</u>.  In order to declare the terms and conditions hereof, and in consideration of the confirmation of the Plan, the Debtor and the Liquidating Trustee have executed this Liquidating Trust Agreement and, effective on the Effective Date, hereby irrevocably transfer to the Liquidating Trust all of the right, title, and interests of the Debtor in and to the Liquidating Trust Assets, to have and to hold unto the Liquidating Trust and its successors and assigns forever, under and subject to the terms of the Plan and the Plan Confirmation Order, for the benefit of the Beneficiaries (to the extent of their respective legal entitlements) and their successors and assigns as provided for in this Liquidating Trust Agreement and in the Plan and Plan Confirmation Order.

1.3     <u>Vesting of Estate Assets</u>.  On the Effective Date, pursuant to the terms of the Plan and Sections 1123, 1141 and 1146(a) of the Bankruptcy Code, all Liquidating Trust Assets shall be vested in the Liquidating Trust, which also shall be authorized to obtain, liquidate, and collect all of the Liquidating Trust Assets not in its possession and pursue all of the Estate Claims that constitute Liquidating Trust Assets under the Plan; provided, however, that the Liquidating Trustee may abandon or otherwise not accept any Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, to have no value to, or will be unduly burdensome to, the

Liquidating Trust. Any Liquidating Trust Assets that the Liquidating Trustee so abandons or otherwise does not accept shall not be property of the Liquidating Trust. In addition, on the Effective Date, the Liquidating Trust shall (a) take possession of all books, records, and files of the Debtor and the Estate and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trust determines, in accordance with this Liquidating Trust Agreement, that retention of same is no longer necessary or beneficial. Subject to the provisions of the Plan, all Liquidating Trust Assets shall be delivered to the Liquidating Trust free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in the Plan or in the Plan Confirmation Order.

      1.4    <u>Acceptance by Liquidating Trustee</u>. The Liquidating Trustee hereby accepts the trust imposed under this Liquidating Trust Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Liquidating Trust Agreement, the Plan, and the Plan Confirmation Order. In connection with and in furtherance of the purposes of the Liquidating Trust, the Liquidating Trustee hereby accepts the transfer of the Liquidating Trust Assets.

      1.5    <u>Name of the Liquidating Trust</u>. The Liquidating Trust established hereby shall be known as the "**FPMC Fort Worth Liquidating Trust**" (the "**Liquidating Trust**").

## ARTICLE II
## THE LIQUIDATING TRUSTEE

      2.1    <u>Appointment</u>. In accordance with the Plan, the Creditors' Committee has selected Clifford Zucker a partner in CohnReznick Advisory as the Liquidating Trustee for the Liquidating Trust. The Liquidating Trustee's appointment shall be effective as of the Effective Date and continue until the earlier of (a) the termination of the Liquidating Trust or (b) the Liquidating Trustee's resignation, death, or removal.

      2.2    <u>General Powers</u>. The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust and the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The Liquidating Trustee shall have all duties, obligations, rights, and benefits assumed by, assigned to, or vested in the Liquidating Trust under the Plan, the Plan Confirmation Order, this Liquidating Trust Agreement, and any other agreement entered into pursuant to or in connection with the Plan. Except as otherwise provided in this Liquidating Trust Agreement, the Plan, or the Plan Confirmation Order, the Liquidating Trustee may control and exercise authority over the Liquidating Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the business of the Liquidating Trust. No person dealing with the Liquidating Trust shall be obligated to inquire into the Liquidating Trustee's authority in connection with the acquisition, management, or disposition of Liquidating Trust Assets. Without limiting the foregoing, but subject to the Plan, the Plan Confirmation Order, and other provisions of this Liquidating Trust Agreement, the Liquidating Trustee shall be expressly authorized to, with respect to the Liquidating Trust and the Liquidating Trust Assets:

      (a)    Exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced, and take all

actions that may be or could have been taken with respect to the Liquidating Trust Assets by any officer, partner, agent, representative, or other party acting in the name of the Debtor or the Estate with like effect as if duly authorized, exercised, and taken by action of such officer, partner, agent, representative, or other party under Sections 704 and 1106 of the Bankruptcy Code as the Debtor's representative appointed for such purpose pursuant to Section 1123(b)(3) of the Bankruptcy Code.

(b)     Open and maintain bank accounts on behalf of or in the name of the Liquidating Trust, take and exercise ownership and control over any existing debtor in possession bank accounts, calculate and make Distributions and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the Liquidating Trust.

(c)     Receive, manage, invest, supervise, and protect the Liquidating Trust Assets, subject to the limitations provided herein.

(d)     Hold legal title to any and all Liquidating Trust Assets.

(e)     Subject to the applicable provisions of the Plan, collect and liquidate all Liquidating Trust Assets pursuant to the Plan.

(f)     Review and, where appropriate, object to Claims and supervise and administer the resolution, settlement, and payment of all Claims and Interests and Distributions to the Beneficiaries in accordance with this Liquidating Trust Agreement, the Plan, and the Plan Confirmation Order.

(g)     Subject to Section 3.2 of this Liquidating Trust Agreement and the applicable provisions of the Plan, investigate, prosecute, compromise, and settle all Estate Claims vested in the Liquidating Trust.

(h)     (i) Seek a determination of tax liability under section 505 of the Bankruptcy Code, (ii) file any and all tax and information returns required with respect to the Debtor and the Liquidating Trust, (iii) make tax elections for and on behalf of the Debtor and the Liquidating Trust, and (iv) pay taxes or other obligations incurred by the Liquidating Trust.

(i)     Calculate and implement Distributions to applicable Beneficiaries as provided for, or contemplated by, the Plan, the Plan Confirmation Order, and this Liquidating Trust Agreement.

(j)     Withhold from the amount distributable to any person such amount as may be sufficient to pay any tax or other charge which the Liquidating Trustee has determined, in its sole discretion, may be required to be withheld therefrom under the income tax laws of the United States, any foreign country, or of any state, local, or political subdivision of either.

(k)     Enter into any agreement or execute any document required by or consistent with the Plan, the Plan Confirmation Order, or this Liquidating Trust Agreement and perform all obligations thereunder.

(l)     Purchase and carry any insurance policies and pay any insurance premiums and costs that the Liquidating Trustee deems reasonably necessary or advisable.

(m)     Retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of the Liquidating Trust Assets.

(n)     Implement, enforce, or discharge all of the terms, conditions, and all other provisions of, and all duties and obligations under, the Plan, the Confirmation Order, and this Liquidating Trust Agreement.

(o)     Resolve issues involving Claims and Interests in accordance with the Plan, including the power to file, prosecute, settle or otherwise resolve objections Claims, and to subordinate and recharacterize Claims by objection, motion, or adversary proceeding.

(p)     Undertake all administrative functions of the Bankruptcy Case, including the payment of fees payable to the Office of the United States Trustee and the ultimate closing of the Bankruptcy Case.

(q)     Appear and participate in any proceeding before the Bankruptcy Court or any other court with proper jurisdiction with respect to any matter regarding or relating to this Liquidating Trust Agreement, the Plan, the Confirmation Order, Liquidating Trust, or the Liquidating Trust Assets; and

(r)     Take all other actions consistent with the provisions of the Plan that the Liquidating Trustee deems reasonably necessary or desirable to administer the Plan.

2.3     <u>Limitations on the Liquidating Trustee</u>.  Notwithstanding anything under applicable law, this Liquidating Trust Agreement, or the Plan to the contrary, the Liquidating Trustee shall not do or undertake any of the following:

(a)     Take any action that would jeopardize treatment of the Liquidating Trust as a "liquidating trust" for federal income tax purposes.

(b)     Exercise any investment power other than the power to invest in demand and time deposits in banks or savings institutions, or other temporary liquid investments, such as short term certificates of deposit or Treasury bills or other investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations or any Internal Revenue Service ("**IRS**") guidelines, whether set forth in IRS rulings, revenue procedures, other IRS pronouncements, or otherwise.

(c)     Receive or retain any operating assets of a going concern business, a partnership interest in a partnership that holds operating assets, or fifty percent (50%) or more of the stock of a corporation with operating assets, except as is absolutely necessary or required under the Plan and the Plan Confirmation Order; provided, however, that in no event shall the Liquidating Trustee receive or retain any such asset or interest that would jeopardize treatment of the Liquidating Trust as a "liquidating trust" for federal income tax purposes.

5

2.4    <u>Compensation of the Liquidating Trustee</u>. The Liquidating Trustee shall be entitled to receive reimbursement of reasonable, actual and necessary costs, fees (including attorneys' fees) and expenses incurred by the Liquidating Trustee in connection with the performance of his duties hereunder, and compensation in accordance with the market rates generally charged by the Trustee for his services, discounted by ten percent (10%). The Liquidating Trustee's current billing rate for the services to be rendered is $775 per hour (prior to the 10% discount), for a discounted hourly rate of $697.50 per hour for this engagement. In the normal course of business, the Liquidating Trustee revises his hourly rates on February 1 of each year.

2.5    <u>Reimbursements</u>. The Liquidating Trustee, any agents or consultants employed pursuant to this Liquidating Trust Agreement, and any professionals or representatives retained by the Liquidating Trust shall be reimbursed from the Liquidating Trust Assets for all reasonable out-of-pocket expenses incurred in the performance of their duties hereunder in addition to any compensation received.

2.6    <u>Liquidating Trust Operating Expenses</u>. The Liquidating Trust Assets will be used to pay all liabilities, costs and expenses of the Liquidating Trust, including compensation then due and payable to the Liquidating Trustee, his agents, representatives, professionals and employees and all costs, expenses, and liabilities incurred by the Liquidating Trustee in connection with the performance of his duties. The reasonable fees and expenses of the Liquidating Trustee and his counsel and agents will be paid out of the Liquidating Trust Assets, without need of Bankruptcy Court approval.

2.7    <u>Investments</u>. The Liquidating Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by Section 345 of the Bankruptcy Code or in other prudent investments, <u>provided</u>, <u>however</u>, that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

2.8    <u>Replacement of the Liquidating Trustee</u>. The Liquidating Trustee shall be subject to removal only by the Bankruptcy Court upon application or motion by a Beneficiary of the Liquidating Trust, after notice and a hearing, and for cause shown, including (a) the willful and continued refusal by the Liquidating Trustee to perform its duties under the Plan and this Liquidating Trust Agreement, and (b) gross negligence, willful misconduct, fraud, embezzlement, or theft. The Liquidating Trustee may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court, provided that such resignation shall become effective only upon the appointment of a permanent or interim successor Liquidating Trustee. In the event of the resignation or removal of the Liquidating Trustee, the successor Liquidating Trustee shall be appointed by the Bankruptcy Court, after notice and a hearing, upon request and based upon submissions from interested parties (including any Beneficiary). Upon its appointment, the successor Liquidating Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Liquidating Trustee relating to the Liquidating Trust shall be terminated; provided, however, that the original Liquidating Trustee's right to indemnification shall survive termination and are subject to the provisions of Article IV hereof.

2.9     Liquidating Trust Continuance. The death, resignation, or removal of the Liquidating Trustee shall not terminate the Liquidating Trust or revoke any existing agency created by the Liquidating Trustee pursuant to this Liquidating Trust Agreement or invalidate any action theretofore taken by the Liquidating Trustee, and the successor Liquidating Trustee agrees that the provisions of this Liquidating Trust Agreement shall be binding upon and inure to the benefit of the successor Liquidating Trustee and all its successors or assigns.

## ARTICLE III
## PROSECUTION AND RESOLUTION OF ESTATE CLAIMS

3.1     The Liquidating Trust's Exclusive Authority to Pursue, Settle, or Abandon Estate Claims. In accordance with Sections 7.10 and 9.3 of the Plan, from and after the Effective Date, prosecution and settlement of all Estate Claims transferred to the Liquidating Trust shall be the sole responsibility of the Liquidating Trust. From and after the Effective Date, the Liquidating Trust shall have exclusive rights, powers, and interests of the Estate to pursue, settle, or abandon such Estate Claims as the sole representative of the Estate pursuant to section 1123(b)(3) of the Bankruptcy Code. All Estate Claims that are not expressly released or waived under the Plan are reserved and preserved and vest in the Liquidating Trust in accordance with the Plan. No Person may rely on the absence of a specific reference in the Plan to a cause of action against it as any indication that the Debtor or Liquidating Trustee will not pursue any and all available Estate Claims against such Person. The Liquidating Trustee expressly reserves all Estate Claims, except for any Estate Claims against any Person that are expressly released or waived under the Plan, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Estate Claims upon, after, or as a consequence of confirmation or consummation of the Plan.

3.2     Settlement of Estate Claims. The Liquidating Trustee, and in accordance with the provisions of the Plan, shall have standing, authority, power, and right to assert, prosecute, and/or settle the Estate Claims, including making a claim under the D&O Policies, employment practices liability, or fiduciary liability insurance policies based upon its powers as a bankruptcy-appointed representative of the Debtor's Estate with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, or similar officials. Without limiting the generality of any of the foregoing, and to avoid any doubt, the Liquidating Trustee shall have standing of an examiner, trustee, receive, liquidator or rehabilitator of the Debtor and shall have exclusive standing and authority to prosecute, settle or compromise any D&O Claims.

3.3     Preservation of Right to Conduct Investigations. Any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtor prior to the Effective Date shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust.

3.4     Privilege. Solely with respect to carrying out the Liquidating Trust's functions, the attorney-client privilege, work product doctrine or other privileges or immunities inuring to the benefit of the Debtor or the Committee, as applicable, or attaching to documents or communications of the Debtor or the Committee, as applicable, shall be transferred to the

Liquidating Trust. The Liquidating Trustee is authorized to assert or waive any such privilege or doctrine, as necessary or appropriate for the administration of the Liquidating Trust.

## ARTICLE IV
## LIABILITY OF LIQUIDATING TRUSTEE

4.1    <u>Standard of Care; Exculpation</u>.  Neither the Liquidating Trustee nor any affiliate, employee, employer, professional, agent, or representative of the Liquidating Trustee shall be liable for losses, claims, damages, liabilities, or expenses in connection with the affairs or property of the Liquidating Trust to any Beneficiary of the Liquidating Trust, or any other person, for the acts or omissions of the Liquidating Trustee; provided, however, that the foregoing limitation shall not apply as to any particular person or entity as to any losses, claims, damages, liabilities, or expenses suffered or incurred by any Beneficiary that are found by a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence, or willful misconduct of such person or entity.  Every act done, power exercised, or obligation assumed by the Liquidating Trust, the Liquidating Trustee, or any affiliate, employee, employer, professional, agent, or representative of the Liquidating Trustee pursuant to the provisions of this Liquidating Trust Agreement or the Plan shall be held to be done, exercised, or assumed, as the case may be, by the Liquidating Trust, the Liquidating Trustee, or any affiliate, employee, employer, professional, agent, or representative of the Liquidating Trustee acting for and on behalf of the Liquidating Trust and not otherwise; provided however, that none of the foregoing entities or persons are deemed to be responsible for any other such entities' or persons' actions or inactions outside of the scope of the authority provided by the Liquidating Trust.  Except as provided in the proviso of the first sentence of this Section 4.1 with respect to any Beneficiary, every person, firm, corporation, or other entity contracting or otherwise dealing with or having any relationship with the Liquidating Trust, the Liquidating Trustee, or any affiliate, employee, employer, professional, agent, or representative of the Liquidating Trustee shall have recourse only to the Liquidating Trust Assets for payment of any liabilities or other obligations arising in connection with such contracts, dealings, or relationships and the Liquidating Trust, the Liquidating Trustee, any director, officer, affiliate, employee, employer, professional, agent, or representative of the Liquidating Trustee shall not be individually liable therefor.

4.2    <u>Indemnification</u>.

(a)    Except as otherwise set forth in the Plan or Plan Confirmation Order, the Liquidating Trustee, and any affiliate, employee, employer, professional, agent, or representative of the Liquidating Trustee (each, an "**Indemnified Party**" and collectively, the "**Indemnified Parties**"), shall be defended, held harmless, and indemnified from time to time by the Liquidating Trust against any and all losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trustee or his or her professionals may incur or sustain by reason of being or having been a Liquidating Trustee or professionals of the Liquidating Trustee for performing any functions incidental to such service; provided, however, such indemnity shall not apply to any such loss, liability, expense, damages, tax, suit, or claim to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing

8

of such person or entity. Satisfaction of any obligation of the Liquidating Trust arising pursuant to the terms of this Section shall be payable only from the Liquidating Trust Assets, may be advanced prior to the conclusion of such matter, and such right to payment shall be prior and superior to any other rights to receive a Distribution of the Liquidating Trust Assets.

(b) The Liquidating Trust shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding, or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in connection with the Liquidating Trust Agreement or the duties, acts, or omissions of the Liquidating Trustee, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Party hereby undertakes, and the Liquidating Trust hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor under this Liquidating Trust Agreement.

4.3 No Liability for Acts of Successor/Predecessor Liquidating Trustees. Upon the appointment of a successor Liquidating Trustee and the delivery of the Liquidating Trust Assets to the successor Liquidating Trustee, the predecessor Liquidating Trustee and any director, officer, affiliate, employee, employer, professional, agent, or representative of the predecessor Liquidating Trustee shall have no further liability or responsibility with respect thereto. A successor Liquidating Trustee shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor Liquidating Trustee shall be in any way liable for the acts or omissions of any predecessor Liquidating Trustee unless a successor Liquidating Trustee expressly assumes such responsibility. A predecessor Liquidating Trustee shall have no liability for the acts or omissions of any immediate or subsequent successor Liquidating Trustee for any events or occurrences subsequent to the cessation of its role as Liquidating Trustee.

4.4 Reliance by Liquidating Trustee on Documents or Advice of Counsel. Except as otherwise provided in this Liquidating Trust Agreement, the Liquidating Trustee and any affiliate, employee, employer, professional, agent, or representative of the Liquidating Trustee may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Liquidating Trustee to be genuine and to have been presented by an authorized party. The Liquidating Trustee shall not be liable for any action taken or suffered by the Liquidating Trustee in reasonable reliance upon the advice of counsel or other professionals engaged by the Liquidating Trustee in accordance with this Liquidating Trust Agreement.

4.5 Insurance. All of the Debtor's rights and their Estate's rights under any Insurance Policy to which the Debtor and/or the Debtor's Estate may be beneficiaries shall vest with the Liquidating Trust for the benefit of the Beneficiaries of the Liquidating Trust and all of the beneficiaries of such policies. The Liquidating Trust may purchase, using Liquidating Trust Assets, and carry all insurance policies and pay all insurance premiums and costs the Liquidating Trustee deems reasonably necessary or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs, and expenses it may incur, including but not limited to attorneys' fees, arising out of or due to its

9

actions or omissions, or consequences of such actions or omissions, other than as a result of its fraud or willful misconduct, with respect to the implementation and administration of the Plan or this Liquidating Trust Agreement.

## ARTICLE V
## GENERAL PROVISIONS CONCERNING
## ADMINISTRATION OF THE LIQUIDATING TRUST

5.1     Register of Beneficiaries.  The Liquidating Trust shall maintain at all times a register of the names, Distribution addresses, amounts of Allowed Claims and the ratable interests in the Liquidating Trust of the Beneficiaries (the "**Register**").  The Liquidating Trustee shall cause the Register to be kept at its office or at such other place or places as may be designated by the Liquidating Trustee from time to time.

5.2     Books and Records.  On the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Debtor and the Estate; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trust determines, in accordance with the Liquidating Trust Agreement, that retention of same is no longer necessary or beneficial.  The Liquidating Trust shall maintain in respect of the Liquidating Trust and the Beneficiaries books and records relating to the Liquidating Trust Assets and income realized therefrom and the payment of expenses of and claims against or assumed by the Liquidating Trust in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof.

5.3     Quarterly Reporting Obligations to Bankruptcy Court and Payment of Statutory Fees.  In no event later than thirty (30) Business Days after the end of the first full quarter following the Effective Date and on a quarterly basis thereafter until all Cash in the Liquidating Trust has been released or paid out in accordance with the Plan and this Liquidating Trust Agreement, the Liquidating Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients, and dates of all Distributions made by the Liquidating Trustee under the Plan and hereunder through each applicable reporting period.

5.4     Filing of Monthly and Quarterly Reports and Payment of Statutory Fees.  The filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly Liquidating Trust reports shall be the responsibility of the Liquidating Trustee.  Statutory Fees shall be paid as such fees may thereafter accrue and be due and payable in accordance with the applicable schedule for payment of such fees.  Any Statutory Fees relating to the period of time prior to the Effective Date shall be paid by the Debtor or Liquidating Trustee, as applicable.  Statutory Fees relating to any period of time after the Effective Date shall be paid by the Liquidating Trustee from funds in the Liquidating Trust Assets.  Such obligation to pay Statutory Fees shall continue until such time as the Bankruptcy Case is closed, dismissed, or converted.

5.5     Filing of Tax Returns.  After the Effective Date, the Liquidating Trust shall be responsible for filing all federal, state, local, and foreign tax returns for the Debtor and the Liquidating Trust.

## ARTICLE VI
## BENEFICIAL INTERESTS AND BENEFICIARIES

6.1     Interest Beneficial Only. .The ownership of a beneficial interest in the Liquidating Trust shall not entitle any Beneficiary to any title in or to the Liquidating Trust Assets or to any right to call for a partition or division of the Liquidating Trust Assets or to require an accounting.

6.2     Evidence of Beneficial Interest. Ownership of a beneficial interest in the Liquidating Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee.

6.3     Transfers of Beneficial Interests. Beneficial interests in the Liquidating Trust shall be nontransferable except upon death of the interest holder or by operation of law. The Liquidating Trust shall not have any obligation to recognize any transfer of Claims or Interests occurring after the Effective Date. Only those holders of Claims and Interests of record stated on the transfer ledgers as of the close of business on the Effective Date, to the extent applicable, shall be entitled to be recognized for all purposes hereunder.

6.4     Absolute Owners. The Liquidating Trustee may deem and treat the Beneficiary reflected as the owner of a beneficial interest on the Register as the absolute owner thereof for the purposes of receiving Distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever.

6.5     Change of Address. A Beneficiary may, after the Effective Date, select an alternative Distribution address by notifying the Liquidating Trustee in writing of such alternative Distribution address. Absent such notice, the Liquidating Trustee shall not recognize any such change of Distribution address. Such notification shall be effective only upon receipt by the Liquidating Trustee.

6.6     Effect of Death, Dissolution, Incapacity, or Bankruptcy of Beneficiary. The death, dissolution, incapacity, or bankruptcy of a Beneficiary during the term of the Liquidating Trust shall not operate to terminate the Liquidating Trust during the term of the Liquidating Trust nor shall it entitle the representative or creditors of the deceased, incapacitated, or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the Distribution of the Liquidating Trust Assets or for a partition thereof nor shall it otherwise affect the rights and obligations of the Beneficiary under this Liquidating Trust Agreement or in the Liquidating Trust.

6.7     Standing. Except as expressly provided in this Liquidating Trust Agreement, the Plan, or the Plan Confirmation Order, a Beneficiary does not have standing to direct the Liquidating Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than against the Liquidating Trustee to the extent provided in this Liquidating Trust Agreement) upon or with respect to the Liquidating Trust Assets.

11

## ARTICLE VII
## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

7.1     Incorporation of Plan Provisions.  As of the Effective Date, the Liquidating Trust shall assume responsibility for all Claims matters established by the Plan and shall be vested with any and all rights and defenses the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

7.2     Objections to Claims.  The Liquidating Trustee shall be entitled to file objections to all Claims and Interests that are otherwise not deemed Allowed Claims or Interests under the Plan and Plan Confirmation Order.  Any objections to Claims shall be served and filed on or before the later of (i) ninety (90) days after the Effective Date or (ii) such later date as may be fixed by the Bankruptcy Court after reasonable notice and opportunity to object.  If an objection has not been filed to a Claim or the Schedules have not been amended with respect to a Claim that (a) was scheduled by the Debtor but (b) was not scheduled as contingent, unliquidated, and/or disputed, by the Claims Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to which the Proof of Claim or scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been Allowed earlier by a Final Order of the Bankruptcy Court.

7.3     Estimation of Claims.  The Liquidating Trustee may (but is not required to) at any time request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim; provided, however, the Liquidating Trustee may elect not to pursue such supplementary proceedings, instead electing to treat such maximum amount as the Allowed amount of such Claim.

## ARTICLE VIII
## DISTRIBUTIONS

8.1     Distributions to Beneficiaries from Liquidating Trust Assets.  All payments to be made by the Liquidating Trust to any Beneficiary shall be made only in accordance with the Plan, the Plan Confirmation Order, and this Liquidating Trust Agreement and from the Liquidating Trust Assets (or from the income and proceeds realized from the Liquidating Trust Assets), and only to the extent that the Liquidating Trust has sufficient Liquidating Trust Assets (or income and proceeds realized from the Liquidating Trust Assets) to make such payments in accordance with and to the extent provided for in the Plan, the Plan Confirmation Order, and this Liquidating Trust Agreement.  Any Distributions to be made by or on behalf of the Debtor or the Liquidating Trustee, as applicable, pursuant to the Plan shall be made by checks drawn on

12

accounts maintained by the Liquidating Trustee or an electronic wire transfer, at the option of the Liquidating Trustee.

8.2     Timing and Amount of Distributions. No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court. No Distribution shall be made on account of any Contested Claim until such Claim is Allowed. Except as expressly set forth in the Plan or in the Confirmation Order, the Liquidating Trustee shall, in the exercise of its good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible. The Liquidating Trustee may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions. Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.

8.3     Means of Cash Payment. Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

8.4     Record Date for Distributions. As of the close of business on the Effective Date (the "Distribution Record Date"), the register for Class 1, 2, 3, and 4 Claims and Interests will be closed, and there shall be no further changes in the holder of record of any Claim or Interest. Although there is no prohibition against the transfer of any Claim by any Creditor, the Liquidating Trustee shall have no obligation to recognize any transfer of any Class 1 or Class 3 Claims or Interests occurring after the Distribution Record Date, and the Liquidating Trustee shall instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date. However, the Liquidating Trustee may, in the exercise of its good faith business judgment, agree to recognize transfers of Claims after the Distribution Record Date, but shall have no obligation to do so.

8.5     Delivery of Distributions. All Distributions, deliveries and payments to the holders of any Allowed Class 1, 2, or 3 Claims shall be made to the addresses set forth on the respective proofs of Claim filed in this Bankruptcy Case by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules. Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence. If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Liquidating Trustee is notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim. However, all notices to the Liquidating Trustee reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Liquidating Trustee may fix in the exercise of its sole discretion. After such date, all Unclaimed Property shall revert to the Liquidating Trustee and the Claim of any holder with respect to such property shall be discharged and forever barred.

8.6    W-9 Forms. Each holder of an Allowed Claim must provide a W-9 form or other such necessary information to comply with any withholding requirements of any governmental unit (collectively the "W-9 Form") to the Liquidating Trustee prior to receiving any Distribution from the Liquidating Trust. In the event a holder of an Allowed Claim does not provide a W-9 Form to the Liquidating Trustee within thirty (30) days of the Effective Date, the Liquidating Trustee shall, at an appropriate time, issue a written request to each holder of an Allowed Claim that has not previously provided a W-9 Form to the Liquidating Trustee. The request shall be in writing and shall be delivered to the last address known to the Debtor or Liquidating Trustee, as appropriate. The request shall conspicuously advise and disclose that failure to provide a W-9 Form to the Liquidating Trustee within thirty (30) shall result in a waiver of any right or rights to a Distribution from the Liquidating Trust. In the event any holder of an Allowed Claim fails to provide the Liquidating Trustee with a W-9 Form within thirty (30) days after the date of written request described herein, then the holder of such Allowed Claim shall be deemed to have waived the right to receive any distribution whatsoever from the Liquidating Trust.

8.7    Time Bar to Cash Payments. Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Liquidating Trustee by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Liquidating Trustee may fix. After such date, all Claims in respect of void checks shall be discharged and forever barred.

8.8    Cure Period. Except as otherwise set forth herein, the failure by the Liquidating Trustee to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Liquidating Trustee has been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default. Until the expiration of such thirty (30) day cure period, the Liquidating Trustee shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes. Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

8.9    Distributions after Substantial Consummation. All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

# ARTICLE IX
# TAXES

9.1    Income Tax Status. Consistent with Revenue Procedure 94-45, 1994-2 C. B. 684, the Liquidating Trust shall be treated as a liquidating trust pursuant to Treasury Regulation

14

Section 301.7701-4(d) and as a grantor trust pursuant to IRC Sections 671-677. Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution from the Estate of an undivided interest in each of the Liquidating Trust Assets (to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Liquidating Trust, and the Beneficiaries will be treated as the grantors and owners thereof.

9.2     Tax Returns. The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with the Plan. The Liquidating Trust also shall annually (for tax years in which Distributions from the Liquidating Trust are made) send to each holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and all such holders shall report such items on their federal income tax returns; provided, however, that no such statement need be sent to any Class that is not expected to receive any Distribution from the Liquidating Trust. The Liquidating Trust's taxable income, gain, loss, deduction, or credit will be allocated to the Beneficiaries in accordance with their relative beneficial interests in the Liquidating Trust.

9.3     Withholding of Taxes and Reporting Related to Liquidating Trust Operations. The Liquidating Trust shall be responsible for filing all federal, state, and local tax returns for the Debtor and the Liquidating Trust. The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each holder. Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim that is to receive a Distribution from the Liquidating Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Liquidating Trustee to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed by the Liquidating Trust shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution to be held by the Liquidating Trustee, as the case may be, until such time as the Liquidating Trustee is satisfied with the holder's arrangements for any withholding tax obligations.

9.4     Valuations. As soon as possible after the Effective Date, the Liquidating Trust shall make a good faith valuation of the Liquidating Trust Assets, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any Governmental Unit for taxing purposes. The Liquidating Trust may request an expedited determination of taxes of the Debtor or of the Liquidating Trust under Section 505(b) of the Bankruptcy Code for all tax returns filed for, or on

15

behalf of, the Debtor and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

    9.5    <u>Payment of Taxes</u>.  The Liquidating Trust shall be responsible for payments of any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets.

**ARTICLE X**
**TERMINATION OF LIQUIDATING TRUST**

    10.1    <u>Termination of Liquidating Trust</u>.  The Liquidating Trustee shall be discharged and the Liquidating Trust shall be terminated, at such time as (i) all Disputed Claims have been resolved, (ii) all of the Liquidating Trust Assets have been liquidated, (iii) all duties and obligations of the Liquidating Trustee under the Liquidating Trust Agreement have been fulfilled, (iv) all Distributions required to be made by the Liquidating Trust under the Plan and this Liquidating Trust Agreement have been made, and (v) the Bankruptcy Case has been closed; provided, however, that in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed one (1) year, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

    10.2    <u>Events Upon End of Term Termination</u>.  At the conclusion of the term of the Liquidating Trust, the Liquidating Trust shall distribute the remaining Liquidating Trust Assets, if any, to the Beneficiaries, in accordance with the Plan, the Plan Confirmation Order, and this Liquidating Trust Agreement, provided, however, that the Liquidating Trust shall not be obligated to make Distributions to a Class of Claims or Interests if the amount of the available cash is *de minimis* and is not sufficient to warrant the incurrence of costs in making the Distribution.

    10.3    <u>Winding Up and Discharge of the Liquidating Trustee</u>.  For the purposes of winding up the affairs of the Liquidating Trust at the conclusion of its term, the Liquidating Trustee shall continue to act as Liquidating Trustee until its duties under this Liquidating Trust Agreement have been fully discharged or its role as Liquidating Trustee is otherwise terminated under this Liquidating Trust Agreement and the Plan.  Upon a motion by the Liquidating Trustee, the Bankruptcy Court may enter an order relieving the Liquidating Trustee, its agents, and employees of any further duties and discharging the Liquidating Trustee.

**ARTICLE XI**
**MISCELLANEOUS PROVISIONS**

    11.1    <u>Amendments</u>.  The Liquidating Trustee may modify, supplement, or amend this Liquidating Trust Agreement without Bankruptcy Court approval (a) to clarify any ambiguity or inconsistency, or render this Liquidating Trust Agreement in compliance with its stated tax purposes, or (b) in any other way that is not inconsistent with the Plan or the Plan Confirmation

Order, only if such modification, supplement, or amendment does not materially and adversely affect the interests, rights, treatment, or Distributions of or to any Beneficiaries. All other modifications, supplements, and amendments shall require prior approval of the Bankruptcy Court.

11.2    Waiver. No failure by the Liquidating Trust or the Liquidating Trustee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

11.3    Cumulative Rights and Remedies. The rights and remedies provided in this Liquidating Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

11.4    No Bond Required. Notwithstanding any state law to the contrary, the Liquidating Trustee (including any successor Liquidating Trustee) shall be exempt from giving any bond, surety, or other security in any jurisdiction.

11.5    Irrevocability. This Liquidating Trust Agreement and the Liquidating Trust created hereunder shall be irrevocable, except as otherwise expressly provided in this Liquidating Trust Agreement.

11.6    Relationship to the Plan. The principal purpose of this Liquidating Trust Agreement is to aid in the implementation of the Plan and, therefore, this Liquidating Trust Agreement incorporates and is subject to the provisions of the Plan and the Plan Confirmation Order. In the event that any provision of this Liquidating Trust Agreement is found to be inconsistent with a provision of the Plan or the Plan Confirmation Order, the provisions of the Plan or the Plan Confirmation Order, as applicable, shall control.

11.7    Division of Liquidating Trust. Under no circumstances shall the Liquidating Trustee have the right or power to divide the Liquidating Trust unless authorized to do so by the Bankruptcy Court.

11.8    Applicable Law. The Liquidating Trust is made in the State of New York, and the Liquidating Trust and this Liquidating Trust Agreement, and the rights and obligations of the Liquidating Trustee, are to be governed by and construed and administered according to the laws of the State of New York; provided, however, that, except as expressly provided in this Liquidating Trust Agreement, there shall not be applicable to the Liquidating Trust, the Liquidating Trustee, or this Liquidating Trust Agreement any provisions of the laws (statutory or common) of the State of New York pertaining to trusts that relate to or regulate (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents, or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property, (d) fees or other sums payable to trustees, officers, agents, or employees of a trust, (e) the allocation of receipts and expenditures to income or principal, (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner

of holding of trust assets, or (g) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees that are inconsistent with the limitations or liabilities or authorities and powers of the Liquidating Trustee set forth or referenced in this Liquidating Trust Agreement.

11.9    Retention of Jurisdiction.  Notwithstanding the Effective Date, and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Liquidating Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection therewith, including, without limitation, this Liquidating Trust Agreement, or any entity's obligations incurred in connection herewith, including without limitation, any action against the Liquidating Trustee or any professional retained by the Liquidating Trustee, in its capacity as such.  Each party to this Liquidating Trust Agreement and each Beneficiary of the Liquidating Trust hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret, or construe any provision of this Liquidating Trust Agreement or of any other agreement or document delivered in connection with this Liquidating Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court.  Each party further irrevocably agrees that any action to enforce, interpret, or construe any provision of this Liquidating Trust Agreement will be brought only in the Bankruptcy Court.  Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret, or construe any provision of this Liquidating Trust Agreement. Notwithstanding the preceding, nothing herein shall be interpreted as requiring the commencement or prosecution of any Estate Claims in the Bankruptcy Court, and all determinations regarding the proper forum for initiating any Estate Claim shall be at the discretion of the Liquidating Trust, consistent with applicable law.

11.10   Severability.  In the event that any provision of this Liquidating Trust Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court to be invalid or unenforceable to any extent, the remainder of this Liquidating Trust Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Liquidating Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

11.11   Limitation of Benefits.  Except as otherwise specifically provided in this Liquidating Trust Agreement, the Plan, or the Plan Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Liquidating Trust Agreement.

11.12   Notices.  All notices, requests, demands, consents, and other communication hereunder shall be in writing and shall be deemed to have been duly given to a person, if delivered in person or by facsimile or if sent by overnight mail, registered mail, certified mail or regular mail, with postage prepaid, to the following addresses:

18

If to the Liquidating Trustee:

> CohnReznick LLP
> Attn: Clifford Zucker, Liquidating Trustee of the
> FPMC Fort Worth Liquidating Trust
> 4 Becker Farm Road
> PO Box 954
> Roseland, NJ 07068-0954

If to a Beneficiary:

> To the name and Distribution address set forth in
> the Register with respect to such Beneficiary.

The parties may designate in writing from time to time other and additional places to which notices may be sent.

11.13  <u>Further Assurances</u>. From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Liquidating Trust Agreement, and to consummate the transactions contemplated hereby.

11.14  <u>Integration</u>. This Liquidating Trust Agreement, the Plan, and the Plan Confirmation Order constitute the entire agreement with, by, and among the parties hereto and thereto, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan, and in the Plan Confirmation Order. This Liquidating Trust Agreement, together with the Plan and the Plan Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise provided in this Liquidating Trust Agreement, the Plan, or Plan Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Liquidating Trust Agreement.

11.15  <u>Interpretation</u>. The enumeration and Section headings contained in this Liquidating Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Liquidating Trust Agreement or of any term or provision hereof. Unless context otherwise requires, whenever used in this Liquidating Trust Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations. The words herein, hereby, and hereunder and words with similar import, refer to this Liquidating Trust Agreement as a whole and not to any particular Section or subsection hereof unless the context requires otherwise. Any reference to the "Liquidating Trustee" shall be deemed to include a reference to the Liquidating Trust" and any reference to the Liquidating Trust shall be

19

deemed to include a reference to the "**Liquidating Trustee**" except for the references in which the context otherwise requires.

11.16 <u>Counterparts</u>. This Liquidating Trust Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Liquidating Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized representatives, all as of the date first above written.

**FOREST PARK MEDICAL CENTER AT FORT WORTH, LLC**

By: _____
    Name: Ronald Winters
    Title: CRO

**CLIFFORD ZUCKER, as Liquidating Trustee**

By:_____
    Name: Clifford Zucker, partner CohnReznick
    Advisory (and not in his personal capacity) in
    his capacity as Liquidating Trustee of the
    Liquidating Trust

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

    By:_____
    Name: Thomas Walker
    Title: Committee Chair

21